IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VEEVA SYSTEMS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 23-1032-JFM |
| | ) | |
| v. | ) | |
| | ) | |
| TACT.AI TECHNOLOGIES, INC. and AKTANA, INC., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

**JOINT RULE 26(f) REPORT**

Pursuant to Rule 26(f) and Judge Murphy's policies and procedures, the parties have thoroughly discussed a discovery plan and provide the following report:

**I.      COUNSEL**

A.   Lead counsel for Plaintiff Veeva Systems:  **Ming-Tao Yang (Finnegan)**

B.   Lead counsel for Defendant Tact.ai Technologies, Inc.: **Michael Sacksteder (Fenwick & West)**

C.   Lead counsel for Defendant Aktana, Inc.: **Christa Anderson (Cooley)**

D.   All counsel who participated in Rule 26(f) conference on behalf of Plaintiff Veeva:

**Ming-Tao Yang (Finnegan)**
**Jeffrey Smyth (Finnegan)**
**Bradfords Schulz (Finnegan)**
**Alexandra Joyce (McCarter & English)**

E.   All counsel who participated in Rule 26(f) conference on behalf of Defendant Tact.ai:

**Michael Sacksteder (Fenwick & West)**
**Andrew Brown (Potter Anderson)**

1

  F.  All counsel who participated in Rule 26(f) conference on behalf of Defendant Aktana:

    **Christa Anderson (Cooley)**
    **Karen Jacobs (Morris Nichols)**

## II. STATEMENT REGARDING TACT.AI (BY COUNSEL FOR TACT.AI)

Aktana, Inc. extended credit to Tacit.ai Technologies (the 'Company') pursuant to a Secured Lien of Credit Note, dated September 29, 2023 (the "Note"), the obligations of which were secured by substantially all assets of the Company. The Note became due and payable on October 25, 2023, and the Company had no means to pay it.

After the Note became due and could not be paid, Aktana declared an event of default and accepted substantially all of the assets of the Company in satisfaction of the debt under the Note in a strict foreclosure under Section 9-620 of the Uniform Commercial Code, which transaction closed on October 30, 2023.

Thereafter, the Company made a general assignment for the benefit of creditors ("ABC") under California law as a means of liquidating the Company. In the ABC, the Company assigned all of its remaining assets to Tact (assignment for the benefit of creditors), LLC, a California limited liability company (the "Assignee") established by Sherwood Partners to act as the Assignee. The ABC process is a liquidation device in CA, which permits an assignee to liquidate any remaining assets, to accept or reject claims against the assignment estate over the 6-month period after the ABC becomes effective, and to pay claims in order of priority (i.e., secured before unsecured creditors) to the extent there are available funds.

After the ABC, the Company has no assets, employees or operations. Counsel for Tact.ai has been informed that the Assignee does not expect to be able to make any distribution to creditors of the Assignment estate.

## III.     DESCRIPTION OF CLAIMS AND DEFENSES

**Plaintiff Veeva**: Veeva, a leading provider of software and data solutions for life science customers—including the Veeva Vault and CRM systems—sued Tact.ai and Aktana for infringement of Veeva's patented technology. D.I. 14. Both Tact.ai and Aktana provide software products and services, including Tact Customer Engagement Platform and Aktana's Copilot, that infringe three asserted patents of Veeva, including United States Patent Nos. 9,055,023; 9,391,937; and 11,501,313. *Id.* at ¶¶ 16-52. The '937 and '023 Patents came from the same patent family and relate to systems and methods for generating approved electronic messages, including approved emails. *Id.* at ¶¶ 16, 19, 30, 33. The '313 Patent relates to systems and methods for providing data visualization and rendering and displaying customized reports to users. *Id.* at ¶¶ 44, 48.

Tact.ai promoted its infringing products and services, including its Tact Customer Engagement Platform, on the back of Veeva's technology, touting its "*leveraging the best of Salesforce and Veeva*," to "cater[ ] to the specific needs of life sciences customers and offer[ ] a seamless and compliant customer engagement experience." D.I., ¶ 12. After Veeva's filing of its original complaint on September 21, 2023, Aktana acquired all Tact.ai assets—including the infringing products, and Veeva amended its complaint on November 7, 2023. D.I., ¶¶ 11-15. In a press release titled "Aktana Acquires Tact.ai's Field Engagement and Conversational AI Technology," Aktana touts "[t]he introduction of Aktana Copilot delivers greater value to field users through best-in-class intelligence delivery on mobile phones and real-time CRM and content syncing." Aktana also states that "[a]dding aspects of Tact.ai's mobile technology and easy-to-use interface to the Aktana portfolio" and "with Tact.ai's technology, Aktana is now even better positioned to lead this journey toward the future of customer engagement."" D.I. 14, ¶¶ 14-15.

Tact.ai answered both the original and the first amended complaints, but Aktana filed a motion to dismiss. D.I. 10, 20, 28. As discussed in Veeva's opposition, the asserted claims are patent eligible under 35 U.S.C. § 101 as involving complex machine implementations, detailed controls, and inventive and transformative concepts. Not only are the patents-in-suit presumed valid by statute under 35 U.S.C. § 282 (*see* D.I. 33, 5), they are not anticipated or obvious in view of any publication, system art, or prior art, and thus should be found valid under 35 U.S.C. §§ 102 and 103. Both defendants' active infringement by replicating the Veeva's patent claim features and Aktana's own and later patenting of similar subject matter demonstrate the importance, patent eligibility, value, and significant benefits of Veeva's asserted patents. Veeva's claims should not be dismissed, and Veeva should be awarded the relief requested.

**Defendant Tact.ai**: See Section II, *supra*.

**Defendant Aktana**:  Aktana is a leader in intelligent customer engagement for the global life sciences industry.  By ensuring that every customer experience is tailored to individual preferences and needs, Aktana helps life science companies strengthen their relationships with healthcare providers to inspire better patient care.

On its face, Veeva's First Amended Complaint ("FAC") makes clear that this case should be dismissed with prejudice.  As discussed in Aktana's motion to dismiss, the asserted claims of the patents-in-suit are directed to abstract ideas and recite no inventive concept under 35 U.S.C. § 101.  Contrary to Veeva's assertions, the asserted patents do not disclose any improvement in technology and, instead, rely exclusively on well-known, pre-existing, and conventional technology to implement abstract ideas, rendering the claims patent-ineligible under § 101.  As discussed in connection with Aktana's motion to dismiss, the presumption of validity is unavailing when, as here, the asserted patents' intrinsic records make it clear that the patents

claim patent-ineligible subject matter as a matter of law. Veeva has identified no issue of fact or claim construction in opposition to Aktana's motion to dismiss that could be relevant to the § 101 inquiry.

In addition, the FAC appears to include Aktana as a defendant purely on the basis of speculation about an announcement related to Aktana's Copilot product. Because the FAC relies exclusively on vague statements in a product announcement without providing analysis of any specific product offered by Aktana, it fails to state a plausible claim of patent infringement.

Finally, even if this case were to proceed beyond the motion to dismiss stage, the patents-in-suit are invalid as they are anticipated or rendered obvious by both publications and system art. In short, Veeva's claims lack merit both for a failure to allege any infringement by Aktana, and also for a failure to assert any valid patent claim.

## IV. STIPULATED FACTS AND INSURANCE COVERAGE AND DEDUCTIBLES

The parties must stipulate as to facts not in dispute. We require stipulations to avoid duplicative and unnecessary discovery, wasted time in depositions asking questions about names, addresses and background or otherwise on dates which are undisputed, employment histories, etc. While we do not expect you to stipulate to disputed facts at this early stage, we do expect a thorough recitation of undisputed facts. The parties must also disclose insurance coverage, including retainer or deductible, consistent with Rule 26(a)(1)(A).

**The parties agree that the following facts are not in dispute:**

- Plaintiff Veeva is asserting a claim for infringement of United States Patent Nos. 9,391,937 ("the '937 patent"), 9,055,023 ("the '023 patent"), and 11,501,313 ("the '313 patent").

- The '937 patent, entitled "System and Method for Controlling Electronic Communications," issued on July 12, 2016 from a patent application filed on April 29, 2015, and purports to claim priority to Provisional Application No. 61/820,029 filed on May 6, 2013, and Provisional Application No. 61/828,034 filed on May 28, 2013.

- The '023 patent, entitled "System and Method for Controlling Electronic Communications," issued on June 9, 2015 from a patent application filed on May 6, 2014, and purports to claim priority to Provisional Application No. 61/820,029 filed on May 6, 2013, and Provisional Application No. 61/828,034 filed on May 28, 2013.

- The '313 patent, entitled "System and Method for Displaying Data from Storage," issued on November 15, 2022 from a patent application filed on October 23, 2017.

**The parties are not aware of any applicable insurance agreement or policy.**

V. **ANTICIPATED SCOPE OF DISCOVERY**

A. Summarize with specificity those issues on which the parties will need to conduct discovery. Identify categories of information each party needs in discovery and why.

**Plaintiff Veeva anticipates it will seek discovery on the following topics, including electronically stored information:**

- Documents and information relating to direct and indirect infringement of the Asserted Patents by Aktana and Tact.ai and the defendants' sales, services, subscriptions, licenses, and agreements.

- Discovery regarding the design, development, use, offer to sell, marketing, and sale of the Accused Products, including core technical documents (e.g., product literature, specifications, schematics, etc.).
- Discovery regarding the acquisition of Tact.ai and its assets by Aktana, the relationships between the defendants, their prior dealings and transactions, agreements between them, any of their affiliates, predecessors, or successors, and/or Aktana's liability for past infringement by Tact.ai.
- Discovery regarding into Defendants' knowledge of the Asserted Patents, including all communications.
- Discovery relating to Defendants defenses.
- Discovery relating to Defendants' contentions regarding patent validity, including without limitation any prior art Defendants contend is relevant to the Asserted Patents.
- Discovery relating to the construction of any claim term.
- Discovery relating to damages, including without limitation documents and information for determining defendants' sales, the royalty base, royalties owed, compensation to for the alleged infringement, including information relevant to the *Georgia-Pacific* factors.
- All documents referring or relating to this action, or the claims or defenses asserted herein.

**Defendant Tact.ai**: See Section II, *supra*.

**Defendant Aktana**:

- Discovery relating to the purported inventions claimed in the patents-in-suit, including without limitation conception, diligence, reduction to practice, and the prosecution of the patents-in-suit.

- Discovery relating to Plaintiff's allegation that Aktana is infringing the patents-in-suit.

- Discovery relating to the invalidity of the patents-in-suit, including without limitation any prior art to the patents-in-suit.

- Discovery relating to claim construction.

- Discovery relating to Plaintiff's claims for relief and damages in this matter, including without limitation information relevant to the *Georgia-Pacific* factor analysis.

- Discovery relating to Plaintiff's marking of any products concerning the patents-in-suit.

- Discovery relating to this action, or the claims or defenses asserted herein.

B. Anticipated number of interrogatories per party:

**A maximum of 25 interrogatories, including contention interrogatories, from a party against each other party are permitted.**

C. Anticipated number of depositions per party:

**The number of depositions against each party is limited to 10 depositions (excluding expert depositions), with each side allowed to take a total of 70 hours of deposition testimony (including party and non-party fact witnesses). A party's Rule 30(b)(6) deposition notice to another party shall count as 1 deposition for purposes of this limit of 10**

**depositions, even if the noticed party designates multiple individuals for the identified**

**topics.**

      D.      Do the parties anticipate the need for any agreements on remote deposition protocols?

**Not at this time. The parties agree that they will discuss any remote deposition**

**scheduling and logistics if the need arises.**

      E.      To the extent either party proposes to exceed the presumptive limits in the Federal Rules for discovery, explain the basis for that proposal.

**No party proposes to exceed the presumptive limits on discovery.**

      F.      Do the parties anticipate the need for a Fed. R. Evid. 502(d) order?

**Yes, the parties anticipate including a FRE 502(d) order as part of a stipulated and**

**court-issued protective order.**

      G.      Do the parties anticipate the need for any third-party discovery? If so, identify the likely third parties and the discovery to be sought

**Given the early stage of the case, the parties are uncertain of whether there will be a**

**need for third party discovery.**

      H.      Do the parties anticipate the need for experts? If so, identify the subjects on which the expert(s) may opine. Be sure to point out whether defendant(s) will be advancing experts on affirmative issues, or only in response to plaintiff(s) experts. State whether expert depositions will be taken, and if so, an agreement or positions on how many will be required.

**Yes, the parties anticipate relying on expert testimony concerning alleged**

**infringement of the Asserted Patents, alleged invalidity of the Asserted Patents, and the**

**calculation of damages, if any, and reserve the right to submit expert testimony on other**

**aspects of the case.**

    I.    Does the plaintiff expect to request attorneys' fees as a prevailing party, either pursuant to a contract or a statute? If so, state the basis for the expected request.

**Plaintiff Veeva: Yes, Veeva has requested attorneys' fees under 35 U.S.C. § 285 as part of its claims for patent infringement. Veeva also reserves the right to request attorneys' fees pursuant to 28 U.S.C. § 1927.**

**Defendant Tact.ai: See Section II,** *supra***.**

**Defendant Aktana: Aktana reserves the right to request attorneys' fees under 35 U.S.C. § 285 and 28 U.S.C. § 1927.**

    J.    Has each party provided written notice to the client of the obligation to preserve all relevant material, including electronic records?

**Plaintiff Veeva: Yes.**

**Defendant Tact.ai: See Section II,** *supra***.**

**Defendant Aktana: Yes.**

## VI. STATUS OF DISCOVERY

The parties must summarize the status of discovery so far. If discovery has not progressed, the parties should explain why. In general, Judge Murphy expects the parties to begin discovery prior to the Rule 16 conference.

**Initial disclosures were served by the parties on February 22, 2024. Veeva served initial sets of written discovery requests on both Defendants on February 23, 2024.**

**Plaintiff Veeva:** Veeva submits that the discovery is already underway, that each defendants have ten outstanding requests for documents and nine outstanding interrogatories to respond to, and the case should proceed pursuant to the joint schedule (Exhibit A).

## VII. PROPOSED CASE MANAGEMENT DEADLINES

**Plaintiff Veeva:** Veeva submits that the discovery is already underway, that each defendants have ten outstanding requests for documents and nine outstanding interrogatories to respond to, and the case should proceed pursuant to the joint schedule (Exhibit A). Aktana's motion to dismiss is not dispositive for the reasons Veeva explained in its opposition to the motion. D.I. 33. Veeva will submit its opposition to Aktana's motion to stay on March 6, 2024. D.I. 44.

**Defendant Aktana:** It is Aktana's position that a schedule should not be entered in the case, and the case should be stayed, pending decision on Aktana's motion to dismiss (D.I. 20), as the motion is entirely dispositive. Aktana proposes the below schedule in the event the Court is nonetheless inclined to enter a schedule at this time.

**The parties have attached a joint proposed scheduling order as Exhibit A.**

A. Rule 26(a)(1) initial disclosures were exchanged: **see the parties' proposal in Exhibit A**

B. Deadline to amend pleadings to add claims or parties (must be as early as practicable to avoid prejudice or unnecessary delays): **see the parties' proposal in Exhibit A**

C. Deadline for affirmative expert reports (if any) and disclosure of lay witness opinion testimony with related information and documents (if any): **see the parties' proposal in Exhibit A**

D. Deadline for rebuttal expert reports (if any): **see the parties' proposal in Exhibit A**

E. Deadline(s) to complete fact/expert discovery: **see the parties' proposal in Exhibit A**

F. Provide an explanation for the position of the parties on whether expert discovery will run concurrently with fact discovery or be sequenced after fact discovery.

**The parties propose that expert discovery be conducted after the conclusion of fact discovery and after the Court has issued a claim construction order for any claim terms the parties believe should be construed.**

G. If any party seeks more than 120 days for discovery, explain why.

**The parties agree that, based on their experience in similar cases concerning patent infringement, more than 120 days is likely to be required to complete fact discovery, given the technical nature of the discovery, typical timing for the exchange if patent contentions, the potential need for claim construction, and the need to coordinate fact discovery with expert witnesses.**

H. Deadline to file motion for summary judgment: **see the parties' proposal in Exhibit A**

## VIII. ELECTRONIC DISCOVERY

The parties' Rule 26(f) discussions must include a thorough discussion about electronic discovery, including but not limited to: (1) the need for electronically stored information ("ESI"); (2) sources of ESI; (3) the anticipated scope of electronic discovery; (4) the identity of potential custodians; (5) whether search terms will be necessary and, if so, any limitations thereto; (6) the respective burdens of collecting, reviewing, and producing ESI, including any claims for cost-shifting under the Federal Rules of Civil Procedure; and (7) any anticipated problems with electronic discovery. The parties should summarize their discussion on these issues here. Counsel who attends the Rule 16 conference should be familiar with and able to discuss any ESI-related issues that might arise.

In addition, the Parties should state whether they have agreed to an ESI stipulation. If so, the parties should submit the stipulation to the Court in advance of the Rule 16 conference. If not, the parties should identify what issues need to be resolved to finalize the stipulation.

12

**Plaintiff Veeva:** Veeva proposes that the discovery of electronically stored information be conducted pursuant to the District of Delaware Default Standard for Discovery, Including Discovery of ESI. Veeva is willing to confer with Aktana regarding modifications to the default standard.

**Defendant Aktana:** Aktana proposes that the parties confer as to an ESI Order and requests time for the parties to confer and see if agreement can be reached.

## IX. PROTECTIVE ORDERS AND CONFIDENTIALITY AGREEMENTS

The parties should indicate whether they anticipate the need for a protective order in this case. If so, the parties must explain what type of information needs protection from disclosure and why such protection is warranted under governing standards. In addition, the parties are directed to Judge Murphy's policies and procedures concerning protective orders and confidentiality agreements.

**The parties agree that a protective order will be needed to protect confidential and highly confidential documents the parties will disclose in discovery, including documents related to the Accused Products, the calculation of damages, and the Asserted Patents. The parties will submit a proposed stipulated protective order to the Court.**

## X. ALTERNATIVE DISPUTE RESOLUTION

A. Have the parties engaged in any settlement discussions? If so, set forth the status of those negotiations. If not, explain why not.

**Plaintiff Veeva:** Yes, Veeva engaged in separate discussions with counsel for Aktana and Tact.ai before each's defendants' response to Veeva's First Amended Complaint. While the parties did not resolve the case, Veeva remains open to continuing settlement discussions upon the parties' exchange of discovery or further developments in the case.

**Defendant Tact.ai**: See Section II, *supra*. In addition, counsel for Tact.ai has informed counsel for Veeva of the situation described in Section II. Counsel for Veeva has requested confirmatory documentation, and counsel for Tact.ai is in the process of obtaining and providing it.

**Defendant Aktana:** Yes, Aktana engaged in separate discussions with counsel for Veeva. While the parties did not resolve the case, Aktana remains open to continuing settlement discussions upon the parties' exchange of discovery or further developments in the case.

    B.    Have the parties explored or considered other forms of alternative dispute resolution? If so, summarize those efforts. If not, state the parties' positions with respect to ADR, as required under Local Rule 53.3.

**Plaintiff Veeva:** Veeva is amenable to participating in alternative dispute resolution (including mediation) and submits ADR will be more productive after the parties exchange discovery.

**Defendant Tact.ai:** See *supra.*

**Defendant Aktana:** Aktana is amenable to participating in alternative dispute resolution in the form of mediation and submits that it will be more productive after the parties exchange discovery.

    C.    Identify the individual who will attend the Rule 16 conference who will have authority to discuss settlement.

**Plaintiff Veeva**: **Ming-Tao Yang (Finnegan)**

**Defendant Tact.ai:** See *supra*. Because Tact.ai has no assets, employees, or operation, it is unable to identify any individual with authority to discuss settlement.

**Defendant Aktana: Christa Anderson (Cooley)**

14

XI.   **CONSENT TO SEND CASE TO A MAGISTRATE JUDGE**

If all parties consent to have a United States Magistrate Judge conduct any or all proceedings in this case, pursuant to 28 U.S.C. § 636(c), the parties should indicate as such and complete and return to the Court a Consent and Reference Of A Civil Action To A Magistrate Judge, (available at this [link](#)).

**The parties do not consent to proceed before a Magistrate Judge.**

XII.   **SERVICE BY ELECTRONIC MEANS**

Confirm that the parties consent to service of pleadings and discovery via email pursuant to Fed. R. Civ. P. 5(b)(2)(E). Any party that does not consent must explain its reasons.

**The parties confirm their consent to service by email.**

XIII.   **POLICIES AND PROCEDURES**

Judge Murphy's policies and procedures are available for the parties to review on the Court's website. By signing below, counsel for each party and/or each pro se party represents that he or she has reviewed the Judge's policies and procedures and acknowledges the requirements contained therein. The parties and their counsel further acknowledge by signing below that Judge Murphy may strike pleadings and other submissions that do not comply with his policies and procedures.

The parties propose that certain changes be made for this case to Judge Murphy's standard procedures to conform to Delaware practices and procedures:

A. <u>Pro Hac Vice Motions</u>

In lieu of using the Eastern District of Pennsylvania's form pursuant to the Court's Policies and Procedures at ¶ 4, the parties respectfully requests to use the District of Delaware's procedure for making motions for pro hac vice admission, as described in Local Rule 83.5.

B. <u>Discovery Dispute Procedures</u>

In addition to the Court's Policies and Procedures at ¶ 7 regarding Discovery and Discovery Disputes, the respectfully request to use the standard discovery dispute procedure for patent cases in the District of Delaware, as follows:

Should counsel find they are unable to resolve a discovery matter or a dispute relating to a protective order, the moving party (i.e., the party seeking relief from the Court) should file a "Motion for Teleconference To Resolve [Discovery/Protective Order] Disputes." The suggested text for this motion can be found attached to this Order. The Court will thereafter order a discovery dispute teleconference and deadlines for submissions. On the date set by court order, generally not less than seventy-two hours prior to the conference (excluding weekends and holidays), the party seeking relief shall file with the Court a letter, not to exceed three pages, outlining the issues in dispute and its position on those issues. This submission shall include: (1) a proposed order, attached as an exhibit, setting out the nature of the relief requested; and (2) to the extent that the dispute relates to responses to certain discovery requests, an attached exhibit (or exhibits) containing the requests and the responses in dispute. On the date set by court order, generally not less than forty-eight hours prior to the conference (excluding weekends and holidays), any party opposing the application for relief may file a letter, not to exceed three pages, outlining that party's reasons for its opposition. Each party shall submit two courtesy copies of its letter and any other document filed in support to the Clerk's Office within one hour of e-filing. All courtesy copies shall be double-sided Should the Court find further briefing necessary upon conclusion of the conference, the Court will order it. Alternatively, the Court may choose to resolve the dispute prior to the conference and cancel the conference.

### C. Filings Under Seal

Pursuant to standard practice in the District of Delaware, the parties respectfully request that all parties be permitted to file documents under seal absent prior leave of the Court, and that a redacted version of any sealed document shall be filed electronically within seven days of the filing of the sealed document. The District of Delaware standard practice is contrary to the Court's Policies and Procedures at ¶ 8, which does not permit parties to file documents under seal absent leave, unless it is an emergency.

### D. Extensions of Time

The parties respectfully request to follow Local Rule 16.4, which requires that any requests for an extension of deadlines for completion of discovery or postponement of the trial shall be made by motion or stipulation at any time prior to expiration of the deadline and include reasons for the request and either a supporting affidavit by the requesting counsel's client or a certification that counsel has sent a copy of the request to the client.

For all other requests to extend deadlines other than completion of discovery or postponement of trial, the parties respectfully request to follow the standard practice in the District of Delaware, in which requests for extensions may be filed at any time prior to the deadline and do not require reasons supporting the request where all parties stipulate to the extension. This standard practice in the District of Delaware is contrary to the Court's Policies and Procedures at ¶ 3, which requires that all requests to extend a deadline must be made at least 7 days before the closest relevant deadline or must further justify the last-minute request.

### E. Statement Required to be Filed with Nondispositive Motions

In addition to the Court's Policies and Procedures at ¶ 5, which requires the parties to certify that the parties have met and conferred on the substance of Rule 12 Motions to Dismiss

17

and Amended Pleadings, the parties respectfully request to follow Local Rule 7.1.1, which requires that parties certify that a reasonable effort has been made to reach agreement prior to filing any nondispositive motion.

    F. <u>Rule 56 Motions</u>

Pursuant to the standard practice in the District of Delaware, the parties request that, concerning the filing of dispositive motions, each side will be limited to a single fifty-page opening brief, a single fifty -page answering brief, and a single twenty-five page reply brief that addresses all of its Daubert objections and case dispositive motions. This standard practice in the District of Delaware appears contrary to the Court's Policies and Procedures at ¶ 9.

## XIV.  OTHER MATTERS

None at this time.

| | |
|---|---|
| Dated: February 29, 2024 | MCCARTER & ENGLISH, LLP |
| | |
| | /s/ Alexandra M. Joyce |
| *Of Counsel:* | Daniel M. Silver (#4758) |
| | Alexandra M. Joyce (#6423) |
| Ming-Tao Yang | 405 N. King Street, 8th Floor |
| Jeffrey D. Smyth | Wilmington, Delaware 19801 |
| FINNEGAN, HENDERSON, FARABOW, | (302) 984-6300 |
|   GARRETT & DUNNER, LLP | dsilver@mccarter.com |
| 3300 Hillview Avenue, 2nd Floor | ajoyce@mccarter.com |
| Palo Alto, CA 94304 | |
| Tel: (650) 849-6600 | |
| Ming.Yang@finnegan.com | *Attorneys for Plaintiff Veeva Systems Inc.* |
| Jeffrey.Smyth@finnegan.com | |
| | |
| Bradford C. Schulz | |
| FINNEGAN, HENDERSON, FARABOW, | |
|   GARRETT & DUNNER, LLP | |
| 1875 Explorer Street, Suite 800 | |
| Reston, VA 20190-6023 | |
| Tel: (571) 203-2700 | |
| Bradford.Schulz@finnegan.com | |
| | |
| | POTTER ANDERSON & CORROON LLP |
| | |
| | /s/ Andrew L. Brown |
| *Of Counsel:* | David E. Moore (#3983) |
| | Bindu A. Palapura (#5730) |
| Michael J. Sacksteder | Andrew L. Brown (#6766) |
| FENWICK &WEST LLP | Hercules Plaza, 6th Floor |
| 555 California Street, 12th Floor | 1313 N. Market Street |
| San Francisco, CA 94104 | Wilmington, DE 19801 |
| Tel: (415) 875-2300 | Tel: (302) 984-6000 |
| | dmoore@potteranderson.com |
| John M. DiBaise | bpalapura@potteranderson.com |
| FENWICK &WEST LLP | abrown@potteranderson.com |
| 801 California Street | |
| Mountain View, CA 94041 | *Attorneys for Defendant Tact.ai Technologies, Inc.* |
| Tel: (650) 988-8500 | |

|  | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
|---|---|
| *Of Counsel:* | */s/ Karen Jacobs* |
|  | Jack B. Blumenfeld (#1014) |
|  | Karen Jacobs (#2881) |
| Christa M. Anderson | 1201 North Market Street |
| COOLEY LLP | P.O. Box 1347 |
| 3 Embarcadero Center, 20th Floor | Wilmington, DE 19899 |
| San Francisco, CA 94111-4004 | (302) 658-9200 |
| (415) 693-2000 | jblumenfeld@morrisnichols.com |
| canderson@cooley.com | kjacobs@morrisnichols.com |
|  |  |
| Samuel K. Whitt | *Attorneys for Defendant Aktana, Inc.* |
| COOLEY LLP |  |
| 1299 Pennsylvania Ave. NW, #700 |  |
| Washington, D.C. 20004-2446 |  |
| (202) 842-7800 |  |
| swhitt@cooley.com |  |
|  |  |
| Eamonn Gardner |  |
| COOLEY LLP |  |
| 11144 15th Street, Suite 2300 |  |
| Denver, CO 80202-2682 |  |
| (720) 566-4000 |  |

20