## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| VEEVA SYSTEMS INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 23-1032-JFM |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| TACT.AI TECHNOLOGIES, INC. and | ) | |
| AKTANA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Veeva Systems Inc. ("Veeva"), by and through its attorneys, and for its Second Amended Complaint against Defendants Tact.ai Technologies, Inc. ("Tact.ai") and Aktana, Inc. ("Aktana") (individually, "Defendant"; collectively, "Defendants"), hereby alleges as follows:

## NATURE OF ACTION

1.      This is an action for infringement of Veeva's United States patents, including Patent Nos. 9,391,937 ("the '937 patent"), 9,055,023 ("the '023 patent"), and 11,501,313 ("the '313 patent") (collectively, "the Patents-in-Suit"). These patents relate generally to systems and methods for controlling electronic communications and processing, using, and/or visualizing data.

1

## THE PARTIES

2.      Veeva is a corporation organized and existing under the laws of Delaware, and it has its principal place of business at 4280 Hacienda Drive, Pleasanton, California 94588.

3.      Upon information and belief, Tact.ai is a corporation organized and existing under the laws of Delaware, and has its principal place of business at 150 Mathilda Place, Suite 104, Sunnyvale, CA 94086.

4.      Upon information and belief, Aktana is a corporation organized and existing under the laws of Delaware, and has its principal place of business at 207 Powell Street, Suite 700, San Francisco, CA, 94102.

## JURISDICTION AND VENUE

5.      This is an action for patent infringement arising under the United States Patent Laws, 35 U.S.C. § 100 et seq.

6.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.      This Court has personal jurisdiction over Tact.ai, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b), because Tact.ai is a Delaware corporation and resides in this district. As a Delaware corporation, Tact.ai has purposefully established systematic and continuous contacts with this judicial district and should reasonably expect to be brought into Court here.

ME1 49077449v.1

8.     This Court has personal jurisdiction over Aktana, and venue is proper in this district pursuant to 28 U.S.C. § 1400(b), because Aktana is a Delaware corporation and resides in this district. As a Delaware corporation, Aktana has purposefully established systematic and continuous contacts with this judicial district and should reasonably expect to be brought into Court here.

## FACTUAL BACKGROUND

9.     Veeva is a leading provider of software and data solutions to life sciences customers in many geographical regions. Veeva's products and services provide pharmaceutical, biotechnology, and clinical research organizations with the benefits and integration of cloud-based computing architectures and mobile applications. Veeva helps companies of all sizes bring medical treatments and devices to market faster and more efficiently, communicate with customers timely and effectively, and address regulatory and compliance matters consistently. As an example, the Veeva Vault and CRM systems, cloud-based software with suites of applications and solutions, empower organizations to manage both content and data on a single platform and enable organizations to quickly deploy powerful applications that manage end-to-end processes with related content and data.

10.     Veeva's industry-leading solutions are protected by Veeva's intellectual property rights, including the patents listed prominently on Veeva's

3

website. See https://www.veeva.com/ip/. The webpage also identifies the Veeva products protected by Veeva's patents.

11.    Tact.ai is a company that markets and provides the Tact Customer Engagement Platform, a tool that aims to compete with certain of Veeva's product offerings. Tact.ai replicates and imitates what Veeva offers to its customers and potential customers, seeking to market Tact.ai's products as offering similar functions and suites of tools, including tools for assisting life sciences companies with customer engagement. Tact.ai's offerings, however, rely on systems created by others, including Veeva.

12.    Tact.ai markets its business and promotes its products and services, including the Tact Customer Engagement Platform, by leveraging what other companies have created, invented, or developed to expand its own products' reach. For example, Tact.ai states that "*By leveraging the best of Salesforce and Veeva*, Tact.ai caters to the specific needs of life sciences customers and offers a seamless and compliant customer engagement experience." Tact.ai also relies on content in Veeva systems, emphasizing that "By *integrating approved content stored in repositories such as Veeva PromoMats* and customer data stored in Salesforce CRM, Tact.ai eliminates the need for costly integrations, customizations, or the creation of new platforms for content management." Tact.ai seeks to benefit from others, emphasizing its attempt to

4

> Minimize disruption by *leveraging the best features of Salesforce and Veeva*. Tact.ai ensures a seamless integration that preserves existing customizations and minimizes the need for costly rewrites or increased vendor dependence.

Tact.ai openly suggests that "By *combining the strengths of the Salesforce platform and Veeva Vault*, Tact.ai delivers a comprehensive and efficient Customer Engagement platform and an excellent user experience." Tact.ai's aggressive marketing and business tactics, as demonstrated by its statements, show its attempt to unfairly compete with Veeva's product offerings by infringing at least three Veeva patents covering the technologies and solutions that Veeva independently developed.

13.     As outlined below, upon information and belief, Defendant Tact.ai has infringed each of the asserted patents (United States Patent Nos. 9,391,937; 9,055,023; and 11,501,313) in connection with its Tact Customer Engagement Platform, including its Tact Field Email, Tact Presenter for MS Teams, and Tact Dynamic Insights products and services (collectively "Accused Tact.ai Products and Services").

14.     Veeva filed a complaint for patent infringement against Tact.ai on September 21, 2023 (D.I. 1). Veeva and Tact.ai agreed to extend Tact.ai's deadline for responding to Veeva's original complaint until November 13, 2023. On October 25, 2023, the Board of Directors of Tact.ai unanimously approved and adopted resolutions approving a Strict Foreclosure and Assignment for the Benefit of

Creditors of substantially all of Tact.ai's assets. On October 30, 2023, Tact.ai shareholders approved and consented to a Strict Foreclosure and Assignment for the Benefit of Creditors of substantially of Tact.ai's assets. Tact.ai filed an answer to the original complaint on October 31, 2023.

15.     Upon information and belief, Aktana develops artificial intelligence (AI)-enabled marketing-decision-support software for the sales and marketing teams of life science companies. On November 1, 2023, Aktana issued a press release announcing "Aktana Acquires Tact.ai's Field Engagement and Conversational AI Technology." The press release stated that the acquisition of "Tact.ai's field engagement and conversational AI technology" would "extend[] Aktana's leadership in field intelligence by delivering several new capabilities frequently requested by commercial and medical leaders overseeing omnichannel programs:

- o Real-time delivery of suggestions and insights on the mobile phone

- o Pervasive and on-demand recommendations throughout the user experience, including a conversational AI assistant

- o Richer engagement data to improve AI recommendations."

Aktana's press release also indicated that "Aktana will also offer Microsoft Teams users a version of Tact Presenter which is the only Microsoft Teams certified remote detailer for Veeva content."

6

16.    Upon information and belief, Tact.ai transferred substantially all of its assets to Aktana (the "Transfer") and Tact.ai did not receive reasonably equivalent value in exchange for the Transfer. Upon information and belief, while this case was pending, Defendant Aktana extended credit to Tact.ai pursuant to a Secured Lien of Credit Note, dated September 29, 2023, secured by substantially all of Tact.ai's assets. When Tact.ai could not pay the debt less than one month later, Aktana accepted substantially all of the assets of the Company in satisfaction of the debt.

17.    Upon information and belief, the Transfer left Tact.ai without sufficient assets to pay its debts as they became due, including any potential judgment entered against Tact.ai in this matter. Upon information and belief, Tact.ai is now insolvent and is unable to satisfy any potential judgment that Veeva may obtain in this case.

18.    Upon information and belief, Aktana has integrated into its products, offers for sale, sales, and services various aspects of Tact.ai's products and services. Aktana's integration also includes the patent-infringing aspects, of Tact.ai's products and services, such as those identified in paragraphs 27-34, 41-48, and 55-57 of this Second Amended Complaint. For example, through the press release, Aktana informed its customers and prospective customers that:

> o  "The introduction of Aktana Copilot delivers greater value to field users through best-in-class intelligence delivery on mobile phones and real-time CRM and content syncing."

7

o "Aktana, Inc., the leader in intelligent customer engagement for the global life sciences industry, today announced the acquisition of Tact.ai's field engagement and conversational AI technology."

o "Adding aspects of Tact.ai's mobile technology and easy-to-use interface to the Aktana portfolio will accelerate our customers' efforts to create the next-generation field force, one that's powered by intelligence and adept at using any channel to support their HCPs."

o "As the pioneer of this category and with Tact.ai's technology, Aktana is now even better positioned to lead this journey toward the future of customer engagement."

o "Introducing Aktana Copilot . . . Through Aktana Copilot, customers can capture richer and more tailored engagement data which enables Aktana AI to produce more contextual and effective recommendations for users to have better conversations."

o "Aktana will also offer Microsoft Teams users a version of Tact Presenter which is the only Microsoft Teams certified remote detailer for Veeva content."

8

19.     Upon information and belief, Defendant Aktana has infringed each of the asserted patents (United States Patent Nos. 9,391,937; 9,055,023; and 11,501,313) in connection with its Aktana Copilot product and services and Aktana products and services that are successors, improvements, variations, and replacements of the Accused Tact.ai Products and Services. Specifically, as outlined in Veeva's infringement contentions, Defendant Aktana has infringed each of the asserted patents by at least Aktana's Execution Suite (including Copilot, Pre-call Planning Dashboard, Field Orchestrator, Omnichannel Orchestrator, Analytics Activator), Aktana's Strategy Suite (including Strategy Console, Tactic Genie, Impact Simulator), Contextual Intelligence Engine, Aktana Platform, Aktana Copilot product and services, Accused Tact.ai Products and Services, and Aktana products and services that are successors, improvements, variations, and replacements of the Accused Tact.ai Products and Services (collectively "Accused Aktana Products and Services").

20.     Upon information and belief, Aktana's Copilot application is, for all intents and purposes, functionally identical to the Accused Tact.ai Products and Services. Aktana offers the Copilot application on the Apple App Store and the Apple App Store webpage for Aktana Copilot references the previous versions of the application when it was owned and operated by Tact.ai. In addition, the website previously operated by Tact.ai now automatically redirects to Defendant Aktana's

9

website. Accordingly, upon information and belief, Aktana now carries on the enterprise that Tact.ai conducted before the Transfer.

21.    On November 6, 2023, Tact.ai executed a General Assignment purporting to transfer "for the benefit of Assignor's creditors" all remaining property of the Assignor (the "Assignment") to Tact (assignment for the benefit of creditors), LLC (the "Assignee"). Upon information and belief, the Assignee did not receive assets of any material value.

22.    On May 3, 2024, Veeva filed a Proof of Claim against the Assignee.

23.    Upon information and belief, the Assignee will not have assets available to make a distribution to any creditors. Counsel for Tact.ai has represented that they have "been informed that the Assignee does not expect to be able to make any distribution to creditors of the Assignment estate."

**COUNT I**
**Infringement of U.S. Patent No. 9,391,937**

24.    Veeva is the owner of the entire right, title, and interest in and to the '937 patent, which was duly and legally issued by the United States Patent and Trademark Office on July 12, 2016. The '937 patent is entitled "System and Method for Controlling Electronic Communications." A true and correct copy of the '937 patent is attached hereto as Exhibit A.

25.    Upon information and belief, Tact.ai has infringed one or more claims of the '937 patent under 35 U.S.C. § 271 (a), (b), and/or (c) by, among other things,

providing the Tact Customer Engagement Platform, including its Tact Field Email product, to its customers. And Aktana has infringed one or more claims of the '937 patent under 35 U.S.C. § 271 (a), (b), and/or (c) by, among other things, acquiring Tact.ai's technology, marketing its technology, and providing and integrating the Tact Customer Engagement Platform or its features, including the Tact Field Email product, to its customers.

26.    Upon information and belief, each Defendant has infringed, directly or indirectly, at least claim 1 of the '937 patent, either literally and/or under the doctrine of equivalents.

27.    Upon information and belief, the Tact Customer Engagement Platform enables "a machine-implemented method for generating approved electronic messages." For example, Tact.ai advertises on its website that the Tact Customer Engagement Platform, including Tact Field Email, enables the user to "[e]ngage customers with personalized emails using approved templates, through an Outlook-like interface."

11

## TACT FIELD EMAIL

Engage customers with personalized emails that deliver
significantly higher open rates while leveraging existing
Veeva templates.

**Engage customers with personalized emails using approved templates, through an Outlook-like interface**

28.     Upon information and belief, use of the Tact Customer Engagement Platform includes "establishing an access protocol for a controlled content repository, whereby approved content is stored in the controlled content repository and is accessible according to the access protocol, and whereby the access protocol comprises at least one set of alignment rules for determining if a first item of approved content within the controlled content repository can be made available to a first customer via an electronic message." For example, Tact.ai describes the ability of the Tact Customer Engagement Platform to "Drive Email Compliance" and provide "Quick Access to approved communication templates," including through integration with a Digital Asset Management System.



The Tact Customer Engagement Platform also provides "personalized emails, with AI-powered Compliance."

**PERSONALIZED EMAILS,
WITH AI-POWERED COMPLIANCE**

29.     Upon information and belief, use of the Tact Customer Engagement Platform includes "aligning the approved content within the controlled content repository with information from an information management system." For example, Tact.ai describes integration with CRM (customer relationship management) and demonstrates the ability of the Tact Customer Engagement Platform to process, use, and/or display CRM data and initiate email communications.

30.     Upon information and belief, use of the Tact Customer Engagement Platform includes "providing the first item of approved content within the controlled content repository for selection by a sender after a determination that the first item of approved content within the controlled content repository is authorized to be made available to the first customer in accordance with the at least one set of alignment rules" and "enabling generation of an electronic message for sending the provided first item of approved content within the controlled content repository to the first customer." For example, Tact.ai describes the ability to provide approved communication templates and enables a user to select from a list of approved

13

templates in generating an electronic communication that can be customized for sending to a customer.



31.    Upon information and belief, each Defendant has infringed, directly or indirectly, at least claim 18 of the '937 patent, either literally and/or under the doctrine of equivalents.

32.    Upon information and belief, the Tact Customer Engagement Platform is "a system for generating approved electronic messages." For example, Tact.ai

14

advertises on its website that the Tact Customer Engagement Platform, including Tact Field Email, enables the user to "[e]ngage customers with personalized emails using approved templates, through an Outlook-like interface."

**Engage customers with personalized emails using approved templates, through an Outlook-like interface**

The Tact Customer Engagement Platform provides "personalized emails, with AI-powered Compliance."

**PERSONALIZED EMAILS, WITH AI-POWERED COMPLIANCE**

33.     Upon information and belief, the Tact Customer Engagement Platform relies on "a controlled content repository for storing approved content, wherein the controlled content repository is accessible according to an access protocol, and whereby the access protocol is based on regulatory restrictions and comprises at least one set of alignment rules for determining if a first item of approved content within the controlled content repository can be made available to a first customer via an electronic message." For example, Tact.ai describes the ability of the Tact Customer Engagement Platform to "Drive Email Compliance" and provide "Quick Access to approved communication templates," including through integration with a Digital Asset Management System.

15



34.    Upon information and belief, the Tact Customer Engagement Platform has "an approved electronic message generator, coupled to the controlled content repository, providing the first item of approved content within the controlled content repository for selection by a sender after a determination that the first item of approved content within the controlled content repository is authorized to be made available to the first customer in accordance with the at least one set of alignment rules, and enabling generation of an electronic message for sending the first item of approved content within the controlled content repository to the first customer." For example, Tact.ai describes the ability to provide approved communication templates and enables a user to select from a list of approved templates in generating an electronic communication that can be customized for sending to a customer.

35.    Upon information and belief, each Defendant has knowledge of the '937 patent, at least because Veeva has identified the '937 patent among its other intellectual property rights on its website, and by virtue of the original complaint for patent infringement filed by Veeva on September 21, 2023.

16

36. Upon information and belief, each Defendant has infringed the '937 patent in an egregious and willful manner and with knowledge of the '937 patent, or was willfully blind to the risk of infringement.

37. Each Defendants' infringement of the '937 patent has caused and continues to cause damages and irreparable harm to Veeva.

## COUNT II
## Infringement of U.S. Patent No. 9,055,023

38. Veeva is the owner of the entire right, title, and interest in and to the '023 patent, which was duly and legally issued by the United States Patent and Trademark Office on June 9, 2015. The '023 patent is entitled "System and Method for Controlling Electronic Communications." A true and correct copy of the '023 patent is attached hereto as Exhibit B.

39. Upon information and belief, Tact.ai has infringed one or more claims of the '023 patent under 35 U.S.C. § 271 (a), (b), and/or (c) by, among other things, providing the Tact Customer Engagement Platform, including its Tact Field Email product, to its customers. And Aktana has infringed one or more claims of the '023 patent under 35 U.S.C. § 271 (a), (b), and/or (c) by, among other things, acquiring Tact.ai's technology, marketing its technology, and providing and integrating the Tact Customer Engagement Platform or its features, including the Tact Field Email product, to customers.

40.    Upon information and belief, each Defendant has infringed, directly or indirectly, at least claim 1 of the '023 patent, either literally and/or under the doctrine of equivalents.

41.    Upon information and belief, the Tact Customer Engagement Platform enables "a machine-implemented method for generating approved electronic messages." For example, Tact.ai advertises on its website that the Tact Customer Engagement Platform, including Tact Field Email, enables the user to "[e]ngage customers with personalized emails using approved templates, through an Outlook-like interface."



42.    Upon information and belief, use of the Tact Customer Engagement Platform involves "establishing a controlled content repository, the controlled content repository being securely and controllably accessed;" "establishing an access protocol for the controlled content repository, whereby approved content is stored in the controlled content repository according to the access protocol and

18

whereby the access protocol comprises at least one set of alignment rules for determining if a first item of approved content within the controlled content repository can be made available to a first customer via an electronic message;" and "storing the approved content within the controlled content repository, the approved content further being accessible according to the established access protocol." For example, Tact.ai describes the ability of the Tact Customer Engagement Platform to "Drive Email Compliance" and provide "Quick Access to approved communication templates," including through integration with a Digital Asset Management System.



The Tact Customer Engagement Platform also provides "personalized emails, with AI-powered Compliance."



43.     Upon information and belief, use of the Tact Customer Engagement Platform includes "aligning the approved content within the controlled content repository with information from an information management system." For example, Tact.ai describes integration with CRM (customer relationship

19

management) and demonstrates the ability of the Tact Customer Engagement Platform to process, use, and/or display CRM data and initiate email communications.

44.    Upon information and belief, use of the Tact Customer Engagement Platform includes "providing the first item of approved content within the controlled content repository for selection by a sender after a determination that the first item of approved content within the controlled content repository is authorized to be made available to the first customer in accordance with the at least one set of alignment rules;" and "providing an approved electronic message generating system which generates an electronic message according to the established access protocol for sending the provided first item of approved content within the controlled content repository to the first customer." For example, Tact.ai describes the ability to provide approved communication templates and enables a user to select from a list of approved templates in generating an electronic communication that can be customized for sending to a customer.

20



45.     Upon information and belief, each Defendant has infringed, directly or indirectly, at least claim 18 of the '023 patent, either literally and/or under the doctrine of equivalents.

46.     Upon information and belief, the Tact Customer Engagement Platform is "a system for generating approved electronic messages." For example, Tact.ai advertises on its website that the Tact Customer Engagement Platform, including

Tact Field Email, enables the user to "[e]ngage customers with personalized emails using approved templates, through an Outlook-like interface."

**Engage customers with personalized emails using approved templates, through an Outlook-like interface**

The Tact Customer Engagement Platform also provides "personalized emails, with AI-powered Compliance."

**PERSONALIZED EMAILS, WITH AI-POWERED COMPLIANCE**

47.     Upon information and belief, the Tact Customer Engagement Platform relies on "a controlled content repository for storing approved content according to an access protocol, wherein the access protocol is based on regulatory restrictions, and comprises at least one set of alignment rules for determining if a first item of approved content within the controlled content repository can be made available to a first customer via an electronic message." For example, Tact.ai describes the ability of the Tact Customer Engagement Platform to "Drive Email Compliance" and provide "Quick Access to approved communication templates," including through integration with a Digital Asset Management System.

22



48.    Upon information and belief, the Tact Customer Engagement Platform has "an approved electronic message generator, coupled to the controlled content repository, coupled to an application over a network, providing the first item of approved content within the controlled content repository for selection by a sender after a determination that the first item of approved content within the controlled content repository is authorized to be made available to the first customer in accordance with the at least one set of alignment rules, and generating an electronic message according to the access protocol for sending the first item of approved content within the controlled content repository to the first customer." For example, Tact.ai describes the ability to provide approved communication templates and enables a user to select from a list of approved templates in generating an electronic communication that can be customized for sending to a customer.

49.    Upon information and belief, each Defendant has knowledge of the '023 patent, at least because Veeva has identified the '023 patent among its other intellectual property rights on its website, and by virtue of the original complaint for patent infringement filed by Veeva on September 21, 2023.

23

50.    Upon information and belief, each Defendant has infringed the '023 patent in an egregious and willful manner and with knowledge of the '023 patent, or was willfully blind to the risk of infringement.

51.    Each Defendant's infringement of the '023 patent has caused and continues to cause damages and irreparable harm to Veeva.

## COUNT III
## Infringement of U.S. Patent No. 11,501,313

52.    Veeva is the owner of the entire right, title, and interest in and to the '313 patent, which was duly and legally issued by the United States Patent and Trademark Office on November 15, 2022. The '313 patent is entitled "System and Method for Displaying Data From a Storage." A true and correct copy of the '313 patent is attached hereto as Exhibit C.

53.    Upon information and belief, Tact.ai has infringed one or more claims of the '313 patent under 35 U.S.C. § 271 (a), (b), and/or (c) by, among other things, providing the Tact Customer Engagement Platform, including its Tact Field Email product, to its customers. And Aktana has infringed one or more claims of the '313 patent under 35 U.S.C. § 271 (a), (b), and/or (c) by, among other things, acquiring Tact.ai's technology, marketing its technology, and providing and integrating the Tact Customer Engagement Platform or its features, including the Tact Presenter for MS Teams and Tact Dynamic Insights product, to its customers.

ME1 49077449v.1

54.     Upon information and belief, each Defendant has infringed, directly or indirectly, at least claim 1 of the '313 patent, either literally and/or under the doctrine of equivalents.

55.     Upon information and belief, the Tact Customer Engagement Platform enables "a computer-implemented method for displaying data from a data storage system." For example, Tact.ai describes the ability to "[n]udge your team with bite-sized insights from multiple sources so they can deliver more value in every customer interaction" and depicts a display of health care provider data.



56.     Upon information and belief, use of the Tact Customer Engagement Platform includes "enabling generation of a data visualization interface for rendering a first custom report according to previously received user configuration, wherein the user configuration comprises a first type of data to be displayed at a first location on the first custom report and a second type of data to be displayed at a second location on the first custom report; wherein the first type of data and the second type

of data are obtained from the data storage system; wherein the data visualization interface comprises instructions in a markup language for specifying the first type of data, the first location, the second type of data, and the second location, and instructions in a second programing language for obtaining the first type of data and the second type of data from the data storage system, and wherein the data visualization interface does not display the first type of data, or the second type of data;" "receiving the instructions in the second programing language from the data visualization interface at an application programming interface ("API");" "sending an API call to the data storage system to obtain the first type of data and the second type of data;" "receiving the first type of data and the second type of data at the data visualization interface;" "rendering the first custom report, wherein the first custom report is based on the first type of data, the first location, the second type of data and the second location in the user configuration;" and "displaying the first custom report on a user interface separate from the data visualization interface." For example, Tact.ai demonstrates the ability of the Tact Customer Engagement Platform to allow a user to provide input regarding the type of data they wish to view through an API interface, and that data is then displayed on a user interface, with a first type of data in a first location and a second type of data in a second location.

ME1 49077449v.1



57.    Upon information and belief, use of the Tact Customer Engagement Platform includes "receiving new data and storing the new data in a memory device;" "updating the first customer report rendered by the data visualization interface with the new data from the memory device;" "receiving an input for accepting the new data to the data storage system;" and "saving the new data to the data storage system in response to the input." For example, the Tact Customer Engagement Platform enables a user to review and/or provide new data, which is received and stored in a memory device, and the system can receive input for accepting the new data in the storage system and save the new data in response to the input.

58.    Upon information and belief, each Defendant has knowledge of the '313 patent, at least because Veeva has identified the '313 patent among its other

intellectual property rights on its website, and by virtue of the original complaint for patent infringement filed by Veeva on September 21, 2023.

59.    Upon information and belief, each Defendant has infringed the '313 patent in an egregious and willful manner and with knowledge of the '313 patent, or was willfully blind to the risk of infringement.

60.    Each Defendant's infringement of the '313 patent has caused and continues to cause damages and irreparable harm to Veeva.

## COUNT IV
## SUCCESSOR LIABILITY

61.    Veeva incorporates each and every allegation set forth above as if set forth at length herein.

62.    Aktana now offers the "Aktana Copilot" application, which was previously the Accused Tact.ai Products and Services. Upon information and belief, Aktana's Copilot application is, for all intents and purposes, functionally identical to the Accused Tact.ai Products and Services.

63.    Aktana offers the Copilot application on the Apple App Store and the Apple App Store webpage for Aktana Copilot references the previous versions of the application when it was owned and operated by Tact.ai. In addition, the website previously operated by Tact.ai now automatically redirects to Defendant Aktana's website.

64.     After Tact.ai transferred substantially all of its assets to Aktana, Aktana carried on the enterprise of Tact.ai. Aktana is mere continuation of Tact.ai.

65.     Upon information and belief, Tact.ai did not receive adequate consideration for the transfer of substantially all of its assets.

66.     Further, upon information and belief, Aktana extended credit to Tact.ai on September 29, 2023 via a Secured Lien of Credit Note, while the present case was pending. Upon information and belief, Aktana was aware of this case, and the patent infringement allegations asserted by Veeva against Tact.ai. Upon information and belief, Aktana extended a Secured Lien of Credit Note to Tact.ai secured by substantially all assets of Tact.ai, aware that Tact.ai was unlikely to be able to pay the note less than one month later, in an attempt to acquire the Tact.ai assets, while avoiding the Tact.ai liabilities (including Tact.ai's liability for patent infringement as a result of the pending litigation).

67.     Aktana essentially acquired Tact.ai, as the Secured Lien of Credit Note to Tact.ai constituted a de facto acquisition of Tact.ai by Aktana.

68.     As a corporate successor to Tact.ai, Aktana is liable for any judgment entered against Tact.ai in this action.

ME1 49077449v.1

## COUNT V
## ACTUAL FRAUD
## CALIFORNIA UNIFORM VOIDABLE TRANSACTIONS ACT

69.    Veeva incorporates each and every allegation set forth above as if set forth at length herein.

70.    On October 30, 2023, Tact.ai transferred substantially all of its assets to Aktana.

71.    The Transfer was made approximately one month after Veeva instituted this action against Tact.ai for patent infringement.

72.    Tact.ai made the transfer before a resolution could be reached in this case.

73.    Tact.ai became insolvent shortly after the transfer of substantially all of its assets to Aktana.

74.    Tact.ai did not receive reasonably equivalent value for the transfer of substantially all of its assets to Aktana.

75.    Tact.ai made the Transfer with intent to hinder, delay or defraud Veeva from collecting a potential future judgment in this action.

76.    Aktana was aware of Tact.ai's intent to hinder, delay or defraud Veeva from collecting a potential future judgment at the time Tact.ai made the transfer.

77.    Tact.ai's transfer was therefore actually fraudulent under the California Uniform Voidable Transactions Act, Cal. Civ. Code § 3439.04 et seq.

## COUNT VI
## CONSTRUCTIVE FRAUD
## CALIFORNIA UNIFORM VOIDABLE TRANSACTIONS ACT

78.    Veeva incorporates each and every allegation set forth above as if set forth at length herein.

79.    Tact.ai transferred substantially all of its assets to Aktana without receiving reasonably equivalent value for those assets.

80.    At the time Tact.ai made the Transfer, it reasonably believed, or at least should have reasonably believed, that judgment may be entered against it in this case.

81.    At the time Tact.ai made the transfer, it reasonably believed, or at least should have reasonably believed, that it would not have sufficient assets to satisfy that potential judgment entered against it.

82.    Tact.ai's transfer was therefore constructively fraudulent under the California Uniform Voidable Transactions Act, § 3439.04 et seq.

## COUNT VII
## CONSTRUCTIVE TRUST

83.    Veeva incorporates each and every allegation set forth above as if set forth at length herein.

84.    Tact.ai's assets are property which may be subject to a valid property interest.

31

85.     Veeva has an interest in those assets as a potential judgment creditor as a result of this action.

86.     Tact.ai transferred those assets to Aktana in an attempt to hinder, delay or defraud Veeva from collecting a potential judgment.

87.     Aktana knew of Tact.ai's intent to hinder, delay or defraud Veeva from collecting a potential judgment.

88.     Aktana has therefore wrongfully acquired Tact.ai's assets.

89.     By operation of law, Aktana is holding Tact.ai's assets in a constructive trust to satisfy any judgment Veeva obtains in this case.

## PRAYER FOR RELIEF

WHEREFORE, Veeva respectfully prays that the Court enter judgement in its favor and award the following relief against Defendants:

A.     Declare that each Defendant has infringed the Patents-in-Suit;

B.     Declare that each Defendant's infringement of the Patents-in-Suit has been willful;

C.     Permanently enjoin each Defendant and its officers, directors, employees, agents, licensees, representatives, affiliates, related companies, servants, successors and assigns, and any and all persons acting in privity or in concert with any of them, from further infringing upon the Patents-in-Suit;

ME1 49077449v.1

D.      Award Veeva actual damages pursuant to 35 U.S.C. § 284, in an amount to be determined at trial, as a result of each Defendant's infringement of the Patents-in-Suit;

E.      Award Veeva pre- and post-judgment interest on all damages awarded, as well as supplemental damages;

F.      Order that damages for infringement of the Patents-in-Suit be trebled under 35 U.S.C. § 284;

G.      Impose successor liability on Aktana for any judgment entered against Tact.ai;

H.      Void the transfer of Tact.ai's assets to Aktana to the extent necessary to satisfy a judgment against Tact.ai;

I.      Impose a constructive trust over the assets Tact.ai transferred to Aktana;

J.      Enjoin Aktana from further disposition of the assets Tact.ai transferred to Aktana;

K.      Declare that this case exceptional and award Veeva its costs and attorney's fees under 35 U.S.C. § 285; and

L.      Award and grant Veeva such other and further relief as the Court deems just and proper under the circumstances.

ME1 49077449v.1

## DEMAND TRIAL BY JURY

Veeva demands a jury trial on all matters.


Dated:  July 15, 2024                    Respectfully submitted,

                                         MCCARTER & ENGLISH, LLP

                                         */s/ Alexandra M. Joyce*
                                         Daniel M. Silver (#4758)
                                         Alexandra M. Joyce (#6432)
                                         Renaissance Centre
                                         405 N. King Street, 8th Floor
                                         Wilmington, DE 19801
                                         Tel: (302) 984-6300
                                         dsilver@mccarter.com
                                         ajoyce@mccarter.com

                                         Ming-Tao Yang
                                         Jeffrey D. Smyth
                                         FINNEGAN, HENDERSON,
                                         FARABOW,
                                           GARRETT & DUNNER, LLP
                                         3300 Hillview Avenue, 2nd Floor
                                         Palo Alto, CA 94304
                                         Tel: (650) 849-6600
                                         Ming.Yang@finnegan.com
                                         Jeffrey.Smyth@finnegan.com

                                         *Counsel for Plaintiff Veeva Systems, Inc.*

ME1 49077449v.1